IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

CARLA F. BOSTON,

    Plaintiff,

vs.                                          No.  3:13-cv-00532-DRH-DGW

U.S. STEEL
      Defendant.

## ORDER

**HERNDON, District Judge:**

### I. INTRODUCTION

Now before the Court is the defendant's Motion for Summary Judgment and Memorandum in Support (Doc. 17). Plaintiff has filed a response to the motion (Doc. 21). Defendant has filed a reply (Doc. 24). Plaintiff alleges that she was retaliated against for filing an EEOC Charge of Discrimination on October 26, 2010. Count I of plaintiff's complaint seeks relief for retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000 *et seq.*, and the Age Discrimination in Employment Act of 1967, 29 U.S.C. §621 *et seq.* Count II of plaintiff's complaint asserts a common law claim for Intentional Infliction of Emotional Distress ("IIED").

Defendant seeks summary judgment on both counts. The Court, having reviewed the parties briefing and relevant exhibits, **DENIES** defendant's motion for summary judgment.

## II. FACTUAL BACKGROUND

### A. Initial 18 Years of Employment

Plaintiff was hired by National Steel Corporation in January 1991 as a secretary in the Engineering Department. Plaintiff continued in the employ of defendant U.S. Steel at Granite City Works following the sale of National Steel Corporation to defendant U.S. Steel in 2003.

Plaintiff worked in the Engineering Department until she was laid off in December 2008 – a total of 18 years. During this 18 year period, the plaintiff performed engineering requests for vendors, ordered supplies, ensured that computers, printers, and fax machines were running properly, maintained vendor catalogs, and obtained computer clearance for contractors. Additionally, plaintiff utilized defendant's computer system to maintain notes of meetings and various Excel spreadsheets, track attendance, rectify claimed vendor hours, and place daily orders including orders for maintenance of engineering facilities. In performing her work responsibilities, the plaintiff utilized the following computer systems/programs: T.I.M.E.S., Excel, Word, and Matrix. Finally, the plaintiff completed training in both Excel and Matrix.

The record indicates that during her initial 18 years of employment, the plaintiff was a capable, competent, and skilled employee (*see e.g.*, Doc. 21-8; Doc. 21-3).

**B.  BOF/October 2010 Adverse Employment Action**

After being laid off in December of 2008, the plaintiff remained on layoff status until she bid on a clerical position in the BOF Department. The plaintiff, who was 61-years-old at the time, began working in the BOF Department in September 2010. By October 2010, the plaintiff had been disqualified from the BOF position ("BOF/October 2010 Adverse Employment Action").

The defendant contends the plaintiff could not perform the job requirements. The plaintiff contends she was terminated because the defendant wanted to replace her with a younger male employee. The plaintiff presents evidence relating to comments that were made about her age, a desire to hire a younger male employee, and inadequate or sham training practices during her short tenure in the BOF Department. Upon being terminated, the plaintiff was replaced with a younger male employee.

**C. October 2010 EEOC Discrimination Charge – Alleging age and sex discrimination arising from the BOF/October 2010 Adverse Employment Action**

On October 26, 2010,[1] the plaintiff filed an EEOC charge alleging she was disqualified from the BOF Position because of her age and sex ("October 2010 EEOC Discrimination Charge")(Doc. 24-1). A Notice of Suit Rights was issued on December 28, 2011 (Doc. 24-2). The plaintiff did not file a lawsuit against defendant based on the conduct alleged in the October 2010 EEOC Charge within the proscribed 90-day filing period.

**D. Intervening Employment at a Different Company – The Wood River Refinery**

After being disqualified from the BOF Position, the plaintiff was hired by Talascend as a computer data entry employee for Bechtel Engineering at the Conoco Philips expansion of its refinery operation at Wood River. This position required the use of sophisticated computer programs. The plaintiff has presented evidence that her employer was happy with her performance and that she performed her employment duties successfully. The plaintiff left this position in order to bid for another position with the defendant – the Pass Control Position (discussed below).

**E. Pass Control/May 2011 Adverse Employment Action**

The plaintiff left her position at the Wood River Refinery to bid on a position in the defendant's Pass Control Department. The plaintiff was awarded the position and began working in the Pass Control Department on April 11,

---

[1] The complaint improperly states the EEOC charge was filed on October 6, 2010.

2011. The plaintiff was disqualified from the Pass Control Position on May 4, 2011 ("Pass Control/May 2011 Adverse Employment Action").

The defendant contends the plaintiff was disqualified from the Pass Control Position when she failed to demonstrate an ability to fulfill the requirements of the job. The plaintiff's alleged inadequacies were documented. However, the plaintiff testified that prior to beginning work in the Pass Control Department, she was told she was going to be disqualified because of her EEOC Charge (Doc. 21-12 pp. 13-14) (*see also* Doc. 21-7 p. 2, plaintiff's former co-worker was told the defendant intended to disqualify the plaintiff from the Pass Control Position prior to her start date). The plaintiff has also presented evidence indicating the defendant intentionally created an environment that would guarantee the plaintiff was disqualified from the Pass Control Position. For instance, deposition testimony and affidavits indicate employees were told not to train the plaintiff and/or were instructed not to give the plaintiff access to necessary computer programs (*see e.g.,* Doc. 21-7; Doc. 21-17 (admitting the plaintiff was not given access to 2 of 3 computer systems necessary to her job performance). As an additional example, there is evidence the plaintiff was asked to complete various tasks she never received training on, were not required for the job, and/or similarly situated employees were never asked to complete (Doc. 21-7). The plaintiff's inability to complete these tasks was then cited as grounds for her disqualification (Doc. 21-7). In other words, evidence in the record indicates the plaintiff was set up to fail.

**F. Ironworks/January 2012 Adverse Employment Action**

After being disqualified from the Pass Control Position, the plaintiff bid on and was awarded a position in the Ironworks Department. The plaintiff started working in the Ironworks Department on December 12, 2011. As with her previous positions, the plaintiff was quickly disqualified. The plaintiff's last day in the Ironworks Department was January 10, 2012 ("Ironworks/January 2012 Adverse Employment Action").

The defendant contends the plaintiff was disqualified from the Ironworks Position because she was missing procedures, not completing tasks, making mistakes, and simply could not fulfill the requirements of the position. However, the record contains evidence indicating that, once again, the plaintiff was set up to fail. For instance, the testimony of Marcia Graham (the employee tasked with training the plaintiff) and of the plaintiff indicates the plaintiff may have received inadequate training, was denied computer access, and/or was denied access to necessary computer programs (*see e.g.,* (Doc. 21-15 pp. 17-18) (admitting computer access is necessary to train but that they were "having trouble" getting the plaintiff access and the plaintiff was instead trained using a spreadsheet); (Doc. 21-15 p. 18) (plaintiff was allowed to use Graham's computer and was not given access to her own computer until the day she left or <u>the morning after she left</u>); (Doc. 21-15 p. 19) (discussing the plaintiff's request for her own access); (Doc. 21-15 p. 25) (plaintiff was trained using spreadsheets rather than the computer)). There is also relevant testimony pertaining to whether the employee

tasked with training the plaintiff was absent from work on dates she claimed she trained the plaintiff (*see e.g.,* Doc. 21-15 pp. 22-23). As well as testimony pertaining to the number of days the plaintiff was trained prior to being disqualified (perhaps as few as 13 days of training) and Marcia Graham's reasoning for taking notes as to the plaintiff's alleged inadequacies.

**G. April 2012 EEOC Retaliation Charge – Alleging retaliation arising from the Ironworks/January 2012 Adverse Employment Action**

On April 10, 2012, the plaintiff filed an EEOC charge alleging retaliation arising from the Ironworks/January 2012 Adverse Employment Action (Doc. 17-7) ("April 2012 EEOC Retaliation Charge"). The April 2012 EEOC Retaliation Charge states in relevant part as follows:

> I was hired by the above referenced employer on January 5, 1991. My most recent position was Clerk earning $21.40/hour. My direct supervisor was Michelle Fields, Iron Works Manager , and her supervisor was Rick Veech, Plant Manager. I returned to work from being laid off on December 9, 2011. I filed EEOC charge #846-2011-06647, which was closed on December 28, 2011 [the October 2010 EEOC Discrimination Charge]. I was laid off in retaliation on January 10, 2012 [the Ironworks/January 2012 Adverse Employment Action].

(Doc. 17-7). The plaintiff further stated that the earliest date of discrimination was January 10, 2012 and the latest date of discrimination was January 10, 2012. The plaintiff did not check the box indicating "Continuing Action." The April 2012 EEOC Retaliation Charge does not reference the Pass Control/May 2011 Adverse Employment Action.[2]

---

[2] Likewise, the intake questionnaire accompanying the April 2012 EEOC Retaliation Charge does not reference the Pass Control/May 2011 Adverse Employment Action (Doc. 17-8). The only

On February 22, 2013, the EEOC issued a determination relating to the plaintiff's April 2012 EEOC Retaliation Charge. The Determination stated that plaintiff was alleging she was "laid off from her position on January 10, 2012, in retaliation [for filing the October 2010 EEOC Discrimination Charge]" (Doc. 21-1 p.1). The Commission concluded there was "reasonable cause to believe that Charging Party's allegations of retaliation are true, and that Respondent discriminated against Charging Party in that she was laid off in retaliation for filing a charge with the Commission alleging sex discrimination in violation of Title VII and age discrimination in violation of the ADEA" (Doc. 21-1 p. 1). On April 19, 2013, a Notice of Suit Rights was issued (Doc. 2 p. 6).

### III.   PRELIMINARY MATTER

**A.  Matters that are Properly Before the Court - Overview**

A dispute has arisen regarding what matters are properly before the Court. The defendant contends that any claim for age or sex discrimination arising from the plaintiff's employment in the BOF department is not properly before the Court. In addition, the defendant argues that the plaintiff's retaliation claim is limited to alleged retaliation arising from the Ironworks/January 2012 Adverse Employment Action (*i.e.* any alleged retaliation arising from the Pass Control/May 2011 Adverse Employment Action is not actionable). The Court addresses these matters in turn below.

---

alleged discriminatory conduct is retaliation arising from the Ironworks/January 2012 Adverse Employment Action. Further, as is discussed later in this opinion, as of April 2012, any claims pertaining to the Pass Control/May 2011 Adverse Employment Action were time-barred.

**B. Alleged Age and/or Sex Discrimination Arising From the BOF/October 2010 Adverse Employment Action is not Actionable**

To the extent that the plaintiff is attempting to assert claims for age and sex discrimination arising from her employment in the BOF Department, such claims are not properly before the Court. The complaint does not assert a claim for age or sex discrimination. The plaintiff may not now raise these claims for the first time in response to the defendant's motion for summary judgment. In addition, these claims are time-barred. As previously discussed, plaintiff filed an EEOC charge on October 26, 2010 alleging age and sex discrimination arising from the BOF/October 2010 Adverse Employment Action (the October 2010 EEOC Discrimination Charge) (Doc. 24-1). A Notice of Suit Rights was issued on December 28, 2011 (Doc. 24-2). The plaintiff did not file a lawsuit against defendant based on the conduct alleged in the October 2010 EEOC Discrimination Charge within the proscribed 90-day filing period. The present lawsuit, filed in June 2013, is well beyond the statutorily proscribed 90-day filing period. 42 U.S.C. § 2000e-5(f)(1).

**C. Retaliation Claim – Termination from the Ironworks Position in January 2012 is the Only Actionable Adverse Employment Action**

The defendant alleges plaintiff's retaliation claim is limited to the Ironworks/January 2012 Adverse Employment Action. The defendant contends the plaintiff did not plead a claim for retaliation arising from the Pass Control/May 2011 Adverse Employment Action and may not enlarge the scope of her complaint by raising this argument in response to the defendant's motion for summary

judgment.[3] The defendant further argues that the plaintiff is barred from asserting a claim for retaliation related to the Pass Control/May 2011 Adverse Employment Action because she failed to exhaust all administrative remedies as to this action.

The Court does not agree with the contention that retaliation arising from the Pass Control/May 2011 Adverse Employment Action is outside the scope of the complaint. However, it is evident that any claim for retaliation arising from the Pass Control/May 2011 Adverse Employment Action is time barred. Accordingly, as is discussed below, a claim for retaliation arising from the Pass Control/May 2011 Adverse Employment Action is not actionable.

Plaintiffs are required to file a charge of discrimination with the EEOC before filing a Title VII action. *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 398, 102 S. Ct. 1127, 1135 (1982). Under Title VII, a plaintiff "shall" file a charge with the EEOC within 180 or 300 days of an "alleged unlawful employment practice." 42 U.S.C. § 2000e-5(e)(1). Specifically, in Illinois, a complainant must file a charge with the EEOC within 300 days of the alleged retaliatory act and failure to do so renders the charge untimely. *Filipovic v. K & R Exp. Systems, Inc.* 176 F.3d 390, 396 (7th Cir. 1999) *citing Koelsch v. Beltone Elecs. Corp.,* 46 F.3d 705, 707 (7th Cir. 1995). "For purposes of this statute of limitations, discrete discriminatory employment actions such as termination, failure to promote,

---

[3] The Seventh Circuit has consistently held that a party may not raise a new argument for the first time in a response to summary judgment. *See e.g., Anderson v. Donahoe,* 699 F.3d 989, 997 (7th Cir.2012); *Conner v. Ill. Dep't of Natural Res.,* 413 F.3d 675, 679 (7th Cir. 2005); *Grayson v. O'Neill,* 308 F.3d 808, 817 (7th Cir. 2002). This principle insures that the defendant receives the "fair notice" required by the federal rules. *Anderson,* 699 F.3d at 997.

denial of a transfer, or refusal to hire are deemed to have been taken on the date they occurred, even if they form part of an ongoing practice or are connected with other acts." *Beamon v. Marshall & Ilsley Trust Co.,* 411 F.3d 854, 860 (7th Cir. 2005). "Thus, each discrete discriminatory act 'starts a new clock for filing charges alleging that act,' and charges not filed within 300 days of the act in question are not actionable." *Id. citing Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113–14, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002).

The Pass Control/May 2011 Adverse Employment Action is a discrete act of termination. As such, the plaintiff had until February 28, 2012 (300 days from the May 4, 2011 disqualification) to file a retaliation charge with the EEOC relating to the Pass Control/May 2011 Adverse Employment Action.[4] The plaintiff never filed an EEOC Charge alleging any retaliatory (or discriminatory) conduct arising from the Pass Control/May 2011 Adverse Employment Action.

The EEOC charge alleging retaliation filed on April 10, 2012 (the April 2012 EEOC Retaliation Charge – the charge that led to the present complaint) was filed too late to have included the Pass Control/May 2011 Adverse Employment Action. Moreover, the April 2012 Retaliation Charge only alleges retaliation arising from the Ironworks/January 2012 Adverse Employment Action. There is no mention of the Pass Control/May 2011 adverse employment decision. Moreover,

---

[4] Under Title VII, a plaintiff "shall" file a charge with the EEOC within 180 or 300 days of an "alleged unlawful employment practice." 42 U.S.C. § 2000e-5(e)(1). Specifically, in Illinois, a complainant must file a charge with the EEOC within 300 days of the alleged retaliatory act and failure to do so renders the charge untimely. *Filipovic v. K & R Exp. Systems, Inc.* 176 F.3d 390, 396 (7th Cir. 1999) *citing Koelsch v. Beltone Elecs. Corp.,* 46 F.3d 705, 707 (7th Cir. 1995).

the April 2012 Charge indicates the plaintiff was complaining of a distinct act of discrimination, noting the earliest date the discrimination took place was "1-10-2012" and the "continuing action" box is not checked. *See Adams v. City of Indianapolis,* 742 F.3d 720, 729-730 (7th Cir. 2014) (discussing the "continuing violation" doctrine and distinct acts of discrimination); *Reynolds v. Tangherlini,* 737 F.3d 1093, 1099-1100 (7th Cir. 2013) (scope of subsequent civil proceedings in federal court limited by charge brought before administrative agency).

For the reasons discussed above, any retaliation claim relating to the Pass Control/May 2011 Adverse Employment Action is not actionable.

**D. Time-Barred Acts May be Offered as Support for the Plaintiff's Actionable Claims**

Although any discriminatory conduct in relation to the BOF/October 2010 Adverse Employment Action and the Pass Control/May 2011 Adverse Employment Action are not actionable, such conduct is properly considered as support for claims that are before the Court. The Seventh Circuit has repeatedly held that courts may look to time-barred acts as support for timely claims. *See Davis v. Con-Way Transp. Cent. Express. Inc.,* 368 F.3d 776, 786 n. 4 (7th Cir. 2004) (quoting *Morgan,* 536 U.S. at 113, 122 S.Ct. at 2072); *see also Fischer v. Avande, Inc.,* 519 F.3d 393, 401 (7th Cir. 2008).

### III. SUMMARY JUDGMENT STANDARD

Summary judgment is proper when the pleadings, discovery, and disclosures establish that there is no genuine issue of material fact and the

movant is entitled to judgment as a matter of law. *Winsley v. Cook Cnty.*, 563 F.3d 598, 602–03 (7th Cir. 2009); Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Indiana*, 259 F.3d 619, 625 (7th Cir. 2001); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor, as well as resolve all factual disputes in favor of the non-moving party. *Scott v. Harris*, 550 U.S. 372 (2007); *Fischer v. Avanade, Inc.*, 519 F.3d 393, 401 (7th Cir. 2008).

The party seeking summary judgment bears the initial burden of establishing the absence of factual issues and entitlement to judgment as a matter of law. *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997) (citing *Celotex*, 477 U.S. at 323). In response, the non-moving party may not rest on bare pleadings alone, but instead must highlight specific material facts to show the existence of a genuine issue to be resolved at trial. *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). The Court will enter summary judgment against a party who does not "come forward with evidence that would reasonably permit the finder of fact to find in [its] favor on a material question." *McGrath v. Gillis*, 44 F.3d 567, 569 (7th Cir. 1995).

## IV. ANALYSIS

### A. Count I -Retaliation

Title VII forbids employers from discriminating against an employee for opposing a practice prohibited by Title VII, or for participating in an investigation, proceeding, or hearing under Title VII. 42 U.S.C. § 2000e–3(a) (the "anti-retaliation statute"). The purpose of the anti-retaliation statute is to protect victims of discrimination who complain about illegal conduct to the EEOC, the courts, or the employer itself. *See generally Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2006). Similarly, the ADEA makes it unlawful for employers to retaliate against a person who has opposed any practice made unlawful under §4 of the ADEA. 29 U.S.C. §623(d). To avoid summary judgment on a retaliation claim under Title VII or the ADEA, a plaintiff may proceed under either the "direct" or "indirect" method of proof. *Silverman v. Bd. of Educ. of City of Chi.*, 637 F.3d 729, 740 (7th Cir. 2011).

Under the direct method, an employee must demonstrate that (1) he engaged in statutorily protected activity; (2) he suffered an adverse action taken by his employer; and (3) there was a causal connection between the statutorily protected activity and the adverse action. *Andonissamy v. Hewlett–Packard Co.*, 547 F.3d 841(7th Cir. 2008). A plaintiff may prove retaliation by either direct or circumstantial evidence. *Plastics Corp.*, 703 F.3d 966, 972 (7th Cir. 2013).

Direct evidence is that which, if believed by a jury, will prove the particular fact in dispute "without reliance upon inference or presumption." *Id*. at 973

(citation omitted). Circumstantial evidence "allows a jury to infer retaliation[.]" *Id*. A plaintiff may prove retaliation through circumstantial evidence by showing: (i) suspicious timing, ambiguous statements or behaviors; (ii) evidence that similarly situated employees who did not lodge complaints were treated differently than the plaintiff; or (iii) "a pretextual reason for an adverse employment action." *Id*. (citation omitted). In other words, causation can be demonstrated "by presenting a convincing mosaic of circumstantial evidence that would support the inference that a retaliatory animus was at work." *Cloe v. City of Indianapolis*, 712 F.3d 1171, 1180 (7th Cir. 2013) (citation and internal quotation marks omitted).

Under the indirect method, a plaintiff must prove that (1) he engaged in statutorily protected activity; (2) he met his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) he was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 662–63 (7th Cir. 2006).

If the plaintiff satisfies her initial burden under the indirect method, the defendant must articulate a legitimate, non-discriminatory reason for its actions. *Stephens v. Erickson*, 569 F.3d 779, 787 (7th Cir. 2006). If the defendant does so, the burden shifts back to the plaintiff, who must show that the defendant's stated reason is a pretext to a discriminatory motive. *Id*.

Under the direct method, plaintiff has evidence that she engaged in a statutorily protected activity (the October 2010 EEOC Discrimination Charge alleging age and sex discrimination arising from the BOF/October 2010 Adverse Employment Action) and that defendant terminated her employment thereafter (the Ironworks/January 2012 Adverse Employment Action). Further, there is a genuine issue of material fact as to whether plaintiff's October 2010 EEOC Discrimination Charge was a but-for cause of the Ironworks/January 2012 Adverse Employment Action.

When drawing reasonable inferences in the plaintiff's favor, there is evidence that the reasons presented for terminating the plaintiff are pretextual. Defendant contends that it terminated the plaintiff because she could not fulfill the requirements of the Ironworks Position. Yet, the record contains evidence suggesting the defendant intended to disqualify the plaintiff from any position she was awarded. The plaintiff worked for the defendant – seemingly without incident – for 18 years prior to being disqualified from the Ironworks Department. During those 18 years there were no performance concerns. In addition, the plaintiff utilized the defendant's computer systems and programs – many of the same systems and programs the defendant claims she was unable to master during her short employment with the Ironworks Department. Further, the plaintiff seems to have performed well during her intervening employment at the Wood River Refinery. The plaintiff has also presented evidence indicating that she was subjected to sham training and was set up to fail. As noted previously, the

plaintiff's experiences and the defendant's alleged conduct during the plaintiff's tenure in the BOF Department and the Pass Control Department may be considered as evidence in support of her claim for retaliation arising from the Ironworks/January 2012 Adverse Employment Action.

When drawing all facts and reasonable inferences in plaintiff's favor, a reasonable jury could find that the defendant's reasons for having terminated her are pretextual. A reasonable jury also could find, if it believes plaintiff's account, that her training, computer access, and timing of termination were suspicious. Thus, a reasonable jury could find, under the "convincing mosaic" approach, that plaintiff's October 2010 EEOC Discrimination Charge caused her termination from the Ironworks Position in January 2012.

As such, defendant's motion for summary judgment with respect to the plaintiffs claim for retaliation is **DENIED**.

**B. Count II - Intentional Infliction of Emotional Distress**

To withstand summary judgment on an intentional infliction of emotional distress ("IIED") claim, a plaintiff must establish that: (1) the defendant's conduct was extreme and outrageous, (2) the defendant intended that their conduct would cause severe emotional distress, or there was at least a high probability that the conduct would inflict severe emotional distress; and (3) the conduct did in fact cause severe emotional distress. *Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001) (applying Illinois law)); *Doe v. Calumet City*, 641 N.E.2d 498 (Ill. 1994).

Furthermore, IIED requires more than "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988) (*quoting* Restatement (Second) of Torts § 46 cmt. D (1965)).

Under Illinois law, a defendant's conduct must be such that the " 'recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim: Outrageous!' " *Doe v. Calumet City*, 641 N.E.2d at 507 (*quoting* Restatement (Second) of Torts § 46 cmt. D (1965)). In *McGrath*, the Supreme Court of Illinois cited non-exclusive factors which can help inform this rather fluid standard. *See McGrath*, 533 N.E.2d at 809–10. One factor that influences the extreme and outrageous nature of the conduct is the degree of power or authority that the actor has over the plaintiff. *Id*.

In the context of a relationship involving an employee and her employer, courts have found extreme and outrageous behavior in situations where an "employer clearly abuses the power it holds over an employee in a manner far more severe than the typical disagreements or job-related stress caused by the average work environment." *Honaker*, 256 F.3d at 491. Another factor often considered by courts is "whether the defendant reasonably believed that his objective was legitimate; greater latitude is given to a defendant pursuing a reasonable objective even if that pursuit results in some amount of distress for a plaintiff." *Id*. at 491.

Plaintiff bases her claim for intentional infliction of emotional distress on the following: (1) the defendant's total control over the plaintiff's working conditions and employment status; (2) the defendant's knowledge of the plaintiff's particularly susceptible state due to the stress of losing an 18-year career; (3) repeated exposure to sham-training and requests to complete impossible tasks; and (4) repeated unjustified negative reviews and terminations. The plaintiff contends that she was belittled, humiliated, and now suffers from anxiety and depression. The plaintiff has been diagnosed with Major Depressive Disorder and Generalized Anxiety Disorder reportedly stemming from the conduct that is the subject of the present action.

The Court finds that the plaintiff has presented sufficient factual questions upon which a jury should be permitted to consider her claim for intentional infliction of emotional distress.

Accordingly, the motion for summary judgment as to plaintiff's claim for intentional infliction of emotional distress is also **DENIED**.

## V. CONCLUSION

**IT IS ORDERED** that defendant's motion for summary judgment is **DENIED**. Plaintiff may proceed to trial on her claim for retaliation arising from the Ironworks/January 2012 Adverse Employment Action and on her claim for intentional infliction of emotional distress.

**IT IS FURTHER ORDERED** that the parties shall appear for a final pretrial conference on **July 22, 2015 at 1:30 pm** in the East St. Louis Courthouse before Judge David R. Herndon. The matter will be set for trial at that time.

**IT IS SO ORDERED.**

Signed this 26th day of April, 2015.

Digitally signed by David R. Herndon
Date: 2015.04.26 08:02:29 -05'00'

**United States District Judge**